IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TYREEK EVANS-MAYES, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 17-1814-CFC |
| | : | |
| ROBERT MAY, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

---

Tyreek Evans-Mayes. *Pro se* Petitioner.

Kathryn J. Garrison, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**[2]

September 7, 2021
Wilmington, Delaware

---

[1]Warden Robert May has replaced former Warden Dana Metzger, an original party to this case. *See* Fed. R. Civ. P. 25(d).

[2]This case was originally assigned to the Honorable Gregory M. Sleet and was re-assigned to the undersigned judge on September 20, 2018.

CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner Tyreek Evans-Mayes' Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.  (D.I. 1)  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 13; D.I. 15)  For the reasons discussed below, the Court will deny the Petition.

## I.    BACKGROUND

### A. Factual History

In the Fall of 2011, several pizza deliverymen were robbed at apartment complexes off of Route 40 in Newark and Bear, Delaware. (D.I. 11-14 at 46-47, 75)  In each case, the suspects would call a pizza shop and order food to be brought to a certain location. (*Id.* at 54, 56, 64-70, 76-78)  When the deliveryman arrived, he was robbed. (*Id.*)  The drivers described the robbers as one or two young black men, usually wearing bandanas. (*Id.*)

On October 15, 2011, a Papa John's delivery driver arrived at St. Andrews Apartments to deliver a large order. (D.I. 11-14 at 53-54)  When he knocked on the apartment where the order was to be delivered, he was told that no one had ordered a pizza. (*Id.* at 54)  As the driver returned to his car, two black men wearing bandanas covering their faces approached him. (*Id.* at 56)  One held a knife. (*Id.* at 56-57)  The men took the order and the driver's money. (*Id.* at 56)

On October 16, 2011, a Pat's Pizzeria delivery driver tried to deliver an order to an address on North Antler's Lane. (D.I. 11-14 at 64)  He was told that no one at that address had ordered pizza. (*Id.*)  The driver called the number connected to the order and was directed to a nearby address. (*Id.*)  While there, a black male, whose face was

not covered, approached him and asked him if he had change for $100. (*Id*. at 65, 67) Then the man pointed a gun at him and told him to hand over his money and the order. (*Id*. at 67) Just before the robbery, a witness saw three black males acting suspiciously around the apartment building where the order was originally supposed to have been delivered. (*Id*. at 60-61)

On October 21, 2011, a Season's Pizza delivery driver tried to deliver an order at a residence in the Apple Chase Apartment complex. (D.I. 11-14 at 67-68) No one answered the door. (*Id*. at 68) Moments later, two black men wearing bandanas over their faces and hoodies approached the driver and asked for his money. (*Id*. at 68-69) One of the men had a gun. (*Id*.)

On November 16, 2011, the same Season's Pizza delivery driver tried to deliver an order at St. Andrews Apartments. (D.I. 11-14 at 73-74) When he knocked on the door to the apartment, however, the door came open. (*Id*. at 74) Because of his earlier experience, the driver immediately ran back to his car. (*Id*.) A black male approached the car and asked him if he was lost. (*Id*.) When the driver replied that he was calling the police, the man ran away. (*Id*.)

A little later that same evening, a Domino's Pizza delivery driver tried to deliver an order at 213 Turnberry Court in St. Andrews Apartments. (D.I. 11-14 at 76) He arrived to find there was no apartment number 213. (*Id*.) Two black men approached him, one wearing a bandana over his face, and the other with an unknown item covering his face. (*Id*. at 77, 80) One of the men was holding a gun. (*Id*. at 77) The driver recognized that the gun was likely a BB gun. (*Id*.) He threw the pizzas up in the air and

3

gave the men his money. (*Id*. at 77-78) The name on the receipt for that order was Petitioner's name. (*Id*. at 80)

While investigating the cases, a New Castle County police detective learned that a St. Andrews Apartments manager had reported a suspicious blue Astro van that had been seen driving throughout the complex. (D.I. 11-14 at 49, 88) The license tag number came back to Terry English, who lived on Jacob's Loop. (*Id*. at 89) A detective traced the number that had been used to call in the first order on October 15th to a cell phone connected to Bryan Bennett, who lived at the same address on Jacob's Loop. (*Id*.) Terry English was Bennett's stepmother. (*Id*. at 106) New Castle County police set up surveillance of the address on November 17, 2011. (*Id*. at 89) They saw two black males leave the residence and drive off in the blue Astro van. (*Id*.) The officers stopped the van after they saw it violate various traffic laws. (*Id*.)

Bennett was driving the van; Petitioner was in the front passenger seat. (D.I. 11-14 at 90) The police officers found two BB guns in the van, one under each of the front seats. (*Id*.) They also found about a half dozen cell phones, a Domino's Pizza flyer, and a Season's Pizza magnet in the van. (*Id*. at 92) The police executed a search warrant at Bennett's house, where they found a red bandana and an empty package for a Daisy BB Gun in his room, and Domino's Pizza boxes in the trash can. (*Id*. at 95)

Bennett entered into a plea agreement with the State and, in return for a reduced sentence, testified against Petitioner at his trial. (D.I. 11-14 at 105-20) Bennett stated that he and Petitioner were friends and that the robberies had been Petitioner's idea. (*Id*. at 106, 109) Bennett testified that Petitioner wielded a knife during the first robbery

4

the two men committed together. (*Id.* at 109)  Although they planned the second robbery, another friend, Troy Williams, held up the delivery driver by himself. (*Id.*)  Bennett testified that he and Petitioner committed the third and fourth robberies, and the November 16 attempted robbery together. (*Id.* at 110-12)  Bennett is 6 feet, 4 inches tall; Petitioner is 6 feet. (D.I. 11-9 at 87; D.I. 11-14 at 9-10, 27)

### B. Procedural History

Petitioner was arrested on November 18, 2011 and later indicted on four counts of first degree robbery, five counts of second degree conspiracy, two counts of wearing a disguise during the commission of a felony, attempted second degree robbery, and possession of a deadly weapon during the commission of a felony ("PDWDCF"). (D.I. 13 at 1)  In February 2012, the Superior Court appointed counsel  to represent Petitioner.  In September 2012, defense counsel filed a motion to withdraw as counsel.  The Superior Court granted the motion.  Petitioner represented himself until December 2012, when new defense counsel was appointed to represent him. (*Id.*)

Prior to jury selection, the State entered a *nolle prosequi* as to attempted robbery and a related second degree conspiracy count. (D.I. 11-1 at 12, Entry No. 119)  On October 7, 2013, a Delaware Superior Court jury found Petitioner guilty of first degree robbery, second degree robbery (as the lesser-included-offense of first degree robbery), PDWDCF, wearing a disguise during the commission of a felony, and two counts of second degree conspiracy. (D.I. 11-14 at 173-76)  The jury acquitted Petitioner of the remaining charges.  On December 13, 2013, the Superior Court sentenced Petitioner to thirty-four years of Level V incarceration, suspended after sixteen years for decreasing

5

levels of supervision.  (D.I. 11-13 at 64-68)  Petitioner appealed, and the Delaware

Supreme Court affirmed his convictions on September 11, 2014.  *See Mayes v. State*,

100 A.3d 1021 (Table), 2014 WL 4536378, at *1 (Del. Sept. 11, 2014).

In September 2015, Petitioner filed a *pro se* motion for postconviction relief

pursuant to Delaware Superior Court Criminal Rule 61.  (D.I. 11-14 at 177-82)  The

Superior Court appointed counsel to represent Petitioner, and approximately six months

later post-conviction counsel filed a motion to withdraw from the representation.  On

August 25, 2016, the Superior Court simultaneously granted defense counsel's motion

to withdraw and denied the Rule 61 motion.  *See State v. Evans-Mayes*, 2016 WL

4502303 (Del. Super. Ct. Aug. 25, 2016).  Petitioner appealed, and the Delaware

Supreme Court affirmed the Superior Court's decision on March 6, 2017.  *See Evans-*

*Mayes v. State*, 158 A.3d 450 (Table), 2017 WL 895912 (Del. Mar. 6, 2017).  Petitioner

filed a petition for a writ of certiorari in the United States Supreme Court.  The Court

denied that petition on October 2, 2017.  *See Evans-Mayes v. Delaware*, 138 S.Ct. 111

(2017).

## II.    GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) "to reduce delays in the execution of state and federal criminal sentences . . .

and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*,

538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas

petition filed by a state prisoner only "on the ground that he is in custody in violation of

the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

6

Additionally, AEDPA imposes procedural requirements and standards for analyzing the

merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure

that state-court convictions are given effect to the extent possible under law." *Bell v.*

*Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief

unless the petitioner has exhausted all means of available relief under state law. *See*

28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v.*

*Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the
> courts of the State; or
>
> (B)(i) there is an absence of available State corrective
> process; or (ii) circumstances exist that render such process
> ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity,

gives "state courts one full opportunity to resolve any constitutional issues by invoking

one complete round of the State's established appellate review process." *O'Sullivan*,

526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the

habeas claims were "fairly presented" to the state's highest court, either on direct

appeal or in a post-conviction proceeding, in a procedural manner permitting the court

to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005);

7

*Castille v. Peoples,* 489 U.S. 346, 351 (1989).  If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding.  *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1996).

 If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted.  *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).  Such claims, however, are procedurally defaulted.  *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).  Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

 Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense

8

impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.  *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to § 2254(d), federal habeas relief may only be granted if

---

[3]*Murray*, 477 U.S. at 496.

the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

10

## III.   DISCUSSION

Petitioner asserts four Claims in his timely-filed Petition: (1) the State failed to support his convictions with sufficient evidence; (2) defense counsel provided six instances of ineffective assistance; (3) the State engaged in prosecutorial misconduct by labeling him as Bennett's partner, lying to a defense witness, and stating another witness was guessing; and (4) Petitioner's initial attorney represented both him and Bennett and used information Petitioner provided to him when representing Bennett.

### A.  Claim One:  Insufficient Evidence

In Claim One, Petitioner asserts that there was insufficient evidence to support his convictions for first and second degree robbery because (1)  Petitioner was not identified by any victim, (2) there was no physical evidence linking Petitioner to the crimes, and (3) "Bennett and Troy Williamson either pleaded or testified to committing the robberies."  D.I. 1 at 5.  Petitioner presented this argument to the Delaware Supreme Court in his direct appeal.  The Delaware Supreme Court stated that the argument would normally be reviewed only for plain error due to Petitioner's failure to raise the issue below but, given the State's apparent waiver of Petitioner's procedural failure, it addressed the claim and denied it as meritless.  *See Mayes*, 100 A.3d 1021 (Table), 2014 WL 4536378, at * (Del. Sept. 11, 2014).  Given these circumstances, Claim One will only warrant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

11

The clearly established federal law governing insufficient evidence claims is the Supreme Court case *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16. Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id*. at 326. It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id*.

Turning to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). In this case, the Delaware Supreme Court did not specifically apply *Jackson* and its progeny in holding that there was sufficient evidence to support Petitioner's convictions. Nevertheless, the Delaware Supreme Court's decision was not contrary to *Jackson* because the Delaware case

12

cited by the Delaware Supreme Court[4] refers to the applicable precedent and its decision does not contradict *Jackson*. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir.2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent).

The Court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Jackson* standard to the facts of Petitioner's case. The thrust of Petitioner's insufficiency-of-the-evidence argument is that the State did not provide any direct evidence (other than Bennett's testimony) of Petitioner's participation in the robberies the jury convicted him of. A jury's verdict, however, may be based entirely on circumstantial evidence, provided the *Jackson* standard is satisfied and the jury is convinced of the defendant's guilt beyond a reasonable doubt. *See Desert Palace Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954); *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (noting "the government may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone."). It is the "jury's function in every case . . . to weigh the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *United States v. Clifford*, 704 F.2d 86, 90 (3d Cir. 1983).

---

[4]In Petitioner's case, the Delaware Supreme Court cited to *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991), which cited to *Shipley v. State*, 570 A.2d 1159, 1170 (Del. 1990). In turn, *Shipley* cited to *Jackson*. *See id.*

Having independently reviewed the record, the Court agrees with the Delaware

Supreme Court that the record evidence adduced at trial was sufficient to support the

jury's verdict.  As the Delaware Supreme Court stated:

> [T]he evidence against [Petitioner] was substantial and
> included, among other things: (i) a pizza order placed in the
> [his] name in connection with one of the robberies; and (ii)
> [his] arrest in a blue van that had been in the vicinity of
> several of the robberies and that contained information about
> multiple pizza shops, numerous cell phones, and BB guns
> resembling semi-automatic pistols. [Petitioner] was arrested
> in the blue van in the company of [Bennett], who gave
> testimony linking [Petitioner] to the robberies and whose
> mother owned the blue van.  Victims of the robberies also
> testified that they had been robbed by two men whose
> respective sizes matched that of [Bennett (6'4")] and
> [Petitioner (6')]. In addition, the manager of the apartment
> complex in which the robberies occurred testified that
> [Petitioner] had been frequenting the complex in a blue van.

*Mayes v. State*, 100 A.3d 1021 (Del. 2014).

In Delaware, a person is guilty of second degree robbery when, in the course of

committing theft, he or she uses or threatens the immediate use of force upon another

person with intent to compel the owner of the proper or another person to deliver up the

property.  11 Del. Code § 831(a)(2); (D.I. 11-3 at 136)  A person is guilty of first degree

robbery if, in the course of committing second degree robbery, he or she "displays what

appears to be a deadly weapon." 11 Del. Code § 832(a)(2).  After considering the

aforementioned evidence in a light most favorable to the State, the Court concludes that

a rational trier of fact could have found Petitioner guilty of first degree robbery for the

October 15, 2011 robbery and second degree robbery (as a lesser included offense) for

the November 16, 2011 robbery.  (*See* D.I. 11-2 at 7-8)  Accordingly, the Court

14

concludes that the Delaware Supreme Court reasonably applied *Jackson* in finding the evidence sufficient to sustain Petitioner's convictions for first and second degree robbery.

## B. Claim Two: Ineffective Assistance of Counsel

In Claim Two, Petitioner contends that defense counsel provided ineffective assistance by: (1) failing to conduct a meaningful pretrial investigation; (2) failing to subpoena a potential alibi witness; (3) failing to file a motion for judgment of acquittal; (4) calling Petitioner and his witnesses liars in order to coerce Petitioner into pleading guilty; (5) failing to procure an expert witness on identification; and (6) failing to investigate Petitioner's competency and to present his psychological and social development evidence in mitigation.

### 1. Claim Two (1), (5) and (6)

The record reveals that Petitioner did not exhaust state remedies for subsections (1), (5) and (6) of Claim Two because he did not present these arguments to the Delaware state courts in his Rule 61 motion or his post-conviction appeal.[5] At this

---

[5]Petitioner contends that he presented the arguments in Claim Two (5) and (6) to the Delaware state courts because the arguments were encompassed by his more general complaint in Claim Two (1) that defense counsel "failed to conduct meaningful pre-trial investigation." (D.I. 15 at 4)  The Court, however, has not located any general allegation in Petitioner's Rule 61 filings in the state court record asserting that defense counsel failed to conduct a meaningful pre-trial investigation.  To the extent he asserted Claim Two (1) in his Rule 61 motion in a vague or subtle manner, the Court concurs with the State's assertion that it was with respect to his allegation in subsection (2).  And, to the extent Petitioner presented subsection (1) to the state courts, his presentation of the more general ineffective assistance of counsel allegation in subsection (1)— failure to conduct meaningful pre-trial investigation—did not fairly present his more specific allegations of ineffective assistance in subsections (5) and (6).  *See Marra v. Larkins*, 46 F. App'x 83, 91 (3d Cir. 2002) (finding that petitioner did not fairly present a separate ineffective assistance claim by "merely alluding to facts that might constitute" a separate

juncture, any attempt by Petitioner to exhaust state remedies by raising Claim Two (1), (5) and (6) in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1). *See DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del. Aug. 15, 2014). Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated by the instant arguments. Similarly, the exceptions to Rule 61(i)(1)'s time bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to the instant arguments.

Since Petitioner is precluded from exhausting state remedies for these three arguments, the Court must treat the claims as procedurally defaulted. Consequently, the Court cannot review the merits of Claim Two (1), (5) and (6) absent a showing of cause and prejudice or that a miscarriage of justice will result absent such review. *See Lines*, 208 F.3d at 160.

Petitioner does not assert cause for his default of the instant arguments. In the absence of cause, the Court will not address the issue of prejudice. The Court further concludes that the miscarriage of justice exception does not excuse Petitioner's procedural default. Accordingly, the Court will deny Claim Two (1), (5) and (6) as procedurally barred from federal habeas review.

---

ineffective assistance allegation.). In short, Petitioner did not exhaust state remedies for Claim Two (1), (5), and (6) because he did not fairly present these arguments to a Delaware state court.

## 2.  Remaining ineffective assistance allegations in Claim Two

Petitioner presented Claim Two's remaining three allegations of ineffective assistance in his Rule 61 motion, which the Superior Court denied as meritless.  The Delaware Supreme Court affirmed that denial "on the basis of [the Superior Court's] August 25, 2016 order." *Evans-Mayes*, 2017 WL 895912, at *1.  Given these circumstances, habeas relief will only be available if the Superior Court's decision was either contrary to, or involved an unreasonable application of, clearly established federal law. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (holding that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment).

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688.  Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

17

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard as governing Petitioner's instant ineffective assistance of counsel contentions. *See Evans-Mayes*, 2016 WL 4502303, at *2 n. 31 & 32. As a result, the Superior Court's decision was not contrary to clearly established federal law.

The Court must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Delaware Supreme Court's denial of Petitioner's ineffective assistance of counsel allegation through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when reviewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is

18

precluded "so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### a. Claim Two (2): Failure to subpoena potential alibi witness

Petitioner contends that defense counsel failed to subpoena an alibi witness. The Superior Court concluded that this contention failed under both prongs of *Strickland* because it was impermissibly vague and lacking in particularity. The Superior Court also determined that defense counsel's performance was not deficient because counsel interviewed all the witnesses identified by Petitioner, and the one witness who was not subpoenaed gave a statement adverse to Petitioner.

It is well-settled that a petitioner has the burden of proving specific facts to support an allegation of ineffective assistance. *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir.1996); *Wells*, 941 F.2d at 259–260. Additionally, to succeed on a claim alleging counsel's failure to investigate potential witnesses, a petitioner must show how the witnesses' testimony would have been favorable and material. *See United States v. Gray*, 878 F.2d 702, 711 (3d Cir.1989).

Here, Petitioner does not identify which witness he believes defense counsel should have subpoenaed or what information a witness may have provided to help his case. According to defense counsel's Rule 61 affidavit, defense counsel or the defense team's private investigator interviewed all the witnesses Petitioner identified. Defense counsel explained that he subpoenaed the witnesses he believed would be helpful, but he did not subpoena the witness who provided a statement that was adverse to Petitioner's case. (D.I. 11-9 at 126) The private investigator's report supports defense

19

counsel's statement, as it shows that all but two of the witnesses identified by Petitioner were subpoenaed.  (D.I. 11-14 at 124-34)  As for the two witnesses who were not subpoenaed, one provided negligible information and the other provided information that would have helped to inculpate Petitioner.  (D.I. 11-14 at 122-25)  Given this record, the Court concludes that the Superior Court reasonably applied *Strickland* when concluding that defense counsel's decision regarding which potential witnesses to subpoena was not objectively unreasonable.

### b. Claim Two (3): Failure to file motion for judgment of acquittal

Next, Petitioner contends that defense counsel provided ineffective assistance by failing to file a motion for judgment of acquittal.  The Superior Court concluded that Petitioner could not demonstrate prejudice under *Strickland* because the Delaware Supreme had already determined on direct appeal that there was sufficient evidence to support Petitioner's convictions.

It is well-settled that defense counsel does not provide ineffective assistance by failing to pursue meritless arguments.  *See Glass v. Sec'y Pennsylvania Dep't of Corr.*, 726 F. App'x 930, 933 (3d Cir. 2018).  As discussed in Section III.A of this Opinion, the Delaware Supreme Court's holding that there was sufficient evidence to support Petitioner's convictions withstands constitutional scrutiny.  Consequently, the Court concludes that the Superior Court reasonably applied *Strickland* in concluding that Petitioner was not prejudiced by defense counsel's failure to file a motion for judgment of acquittal.

20

### c.  Claim Two (4): Calling Petitioner and witness liars

Petitioner contends that defense counsel called him and his alibi witness liars in an attempt to induce him to plead guilty.  Without determining if defense counsel engaged in the alleged name calling, the Superior Court denied the argument for lack of prejudice because Petitioner actually proceeded to trial and did not enter a guilty plea.

In *Strickland*, the Supreme Court stated that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.  Even if the Court were to assume that defense counsel uttered the statements described by Petitioner, the fact that Petitioner proceeded to trial demonstrates that Petitioner was not influenced by defense counsel's alleged attempt to cause him to plead guilty. Therefore, the Court concludes that the Superior Court reasonably applied *Strickland* in denying Claim Two (4) for lack of prejudice.

### C.  Claim Three: Prosecutorial Misconduct

In Claim Three, Petitioner asserts that the State engaged in misconduct "in labeling [him] as Bennett's partner, in lying to Nathan Ennis, and in stating that witness Kelly was guessing." (D.I. 1 at 8)  Petitioner raised Claim Three in his Rule 61 motion, which the Superior Court denied as procedurally defaulted under Delaware Superior Court Criminal Rule 61(i)(3) due to Petitioner's failure to raise the issue in the proceedings leading to the judgment of conviction or on direct appeal.

This Court has consistently held that Rule 61(i)(3) is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v.*

21

*Carroll*, 416 F.Supp.2d 283, 296 (D.Del.2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D.Del. Oct. 11, 2005). Consequently, the instant Claim is procedurally defaulted, meaning that the Court cannot review its merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claim is not reviewed.

Petitioner asserts that he did not raise the instant Claim on direct appeal because the issue was not preserved for appellate review and would only have been reviewed for plain error which he contends "is akin to no review at all." (D.I. 15 at 8) This argument does not establish cause for Petitioner's default of Claim Three, because Petitioner's opinion regarding plain error review does not demonstrate that an objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. To the extent the Court should liberally construe his "plain error" argument as an attempt to blame defense counsel for failing to object to these instances of prosecutorial misconduct, the argument still does not establish cause. Although, "in certain circumstances counsel's ineffectiveness in failing to properly preserve [a] claim for review in state court will suffice" to constitute cause to excuse procedural default, that particular allegation of ineffective assistance of counsel must first be raised as an independent claim in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Since Petitioner did not present the issue of defense counsel's alleged failure to raise an issue of prosecutorial misconduct to the Delaware state courts as an independent ineffective assistance of counsel claim, defense counsel's alleged failure to

22

present Claim Three to the Delaware courts cannot provide cause for the instant
default.

In the absence of cause, the Court need not address the issue of prejudice.
Additionally, Petitioner's default cannot be excused under the miscarriage of justice
exception to the procedural default doctrine, because he has failed to provide new
reliable evidence that can establish his actual innocence.  Accordingly, the Court will
deny Claim Three as procedurally barred from federal habeas review.

### D.  Claim Four:  Defense Counsel's Conflict of Interest

The record reveals that a different attorney represented both Bennett and
Petitioner for the first two months of their cases.  At the end of the two months, the
attorney ceased representing Petitioner and remained as Bennett's counsel, and new
defense counsel took over Petitioner's representation.  (D.I. 11-12 at 4; D.I. 11-14 at
181; D.I. 13 at 23)  In his final Claim, Petitioner argues that his right to due process was
violated because the initial attorney who also represented Bennett used the attorney-
client privileged information provided by Petitioner in his representation of Bennett.

Petitioner did not raise this issue during trial or on direct appeal.  Therefore, the
Superior Court denied Claim Four as procedurally barred under Rule 61(i)(3).  For the
same reasons discussed with respect to Claim Three, Claim Four is procedurally
defaulted because the Superior Court rejected Claim Four on an independent and
adequate state law ground.

Petitioner attempts to establish cause for his failure to present the instant Claim
in the proceedings leading to his judgment of conviction by arguing that the evidence of

23

the first attorney's actions was not evident from the record.  (D.I. 6 at 28; D.I. 15 at 10-11)  The Court rejects this argument as specious.  Petitioner knew that the first attorney represented both him and Bennett for the first two months during the proceedings leading to the judgment of conviction.  Petitioner also would have known the privileged information he told the attorney.  In short, Petitioner has not demonstrated cause.

Given the absence of cause, the Court will not address the issue of prejudice.  In addition, the miscarriage of justice exception is inapplicable because Petitioner has not provided new reliable evidence of his actual innocence.  Accordingly, the Court will deny Claim Four as procedurally barred from federal habeas review.

## V.     CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealabilty.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability may be issued only when a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *See Slack,* 529 U.S. at 484.

24

The Court has concluded that the instant Petition fails to warrant federal habeas relief and is persuaded that reasonable jurists would not find this conclusion to be debatable.  Consequently, the Court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the foregoing reasons, the Court will deny the instant Petition without an evidentiary hearing.  An appropriate Order will be entered.